### 17279. MEADS *v.* THE STATE.

BROYLES, C. J.  Under the particular facts of the case the jury were authorized to find that the evidence adduced, although circumstantial, was sufficient to exclude every *reasonable* hypothesis save that of the defendant's guilt.  The cases cited in the brief of counsel for the plaintiff in error are distinguished by their facts from this case.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*

DECIDED MAY 12, 1926.

Conviction of possessing liquor; from city court of Sylvania— Judge Evans.  February 25, 1926.

A county policeman testified: that he and other county police went to the home of Jim Meads, the father of the defendant, Twiggs Meads, with a search warrant, because the defendant, who lived with his father, had been reported for handling whisky, and

---

Criminal Law, 16 C. J. p. 762, n. 32.

that they found in a trunk in a bedroom upstairs two half-gallon fruit-jars full of "shine" whisky, wrapped separately in news-papers; that the defendant was not at home, but his father was there; that after they got the whisky they went to the home of the defendant's cousin, Bennie Meads, and on the way met the de-fendant's father coming from there; that when they got to the gate at Bennie Meads' home they inquired for the defendant, and about that time they saw the defendant stooping over, running through the cotton patch back of the house; that he ran into an old pond, and they ran him through bushes and briars and caught him in a field on the other side of the pond, where he tried to conceal him-self by lying down in the cotton; and that just before they got to him he raised up and said, "Here I am, come on and get me."

The defendant, in his statement at the trial, said that when the officers came to his house his father came to where he was, at Ben-nie Meads' home, and told him of the finding of the whisky by the officers, and said, "Now you know you are under suspended sen-tence; you had better keep out of the way until I can go down to Sylvania and see what there is to it;" that he went out of the back door and started walking across the field, and, on hearing one of the officers say, "Yonder goes the damned son of a bitch," he started running and tried to keep out of the way, and they over-took him and arrested him, and one of the officers cursed him; that the whisky was not his whisky, and he did not know whose it was, and that the room out of which the officers got it was not his room, that his room was on the other side of the stairway. In re-buttal it was testified that there was no cursing, and that nothing was done to frighten or intimidate the defendant.

*H. A. Boykin, J. W. Overstreet,* for plaintiff in error.

*J. H. Howard, solicitor,* contra.